IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re:<br><br>**DIANA L. GLASS,**<br><br>*Debtor.* | Bankruptcy No. 12-3-2301 RAG<br><br>Chapter 11<br><br>**DEBTOR'S CHAPTER 11 PLAN DATED NOVEMBER 13, 2013** |

**DIANA L. GLASS**, Debtor-in-Possession, through the undersigned counsel, submits to creditors, as proponent, this Plan of Reorganization dated November 13, 2013 (the "Plan") pursuant to Section 1121, *et seq.,* of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date herewith. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## ARTICLE I - DEFINITIONS

1.1     "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2     "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3     "Allowed Claim" means a Claim against the Debtor (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4     "Assets" means all property, real or personal, in which the Debtor has an interest.

1.5     "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6     "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7     "Bankruptcy Code" means Title 11 of the United States Code.

1.8     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Maryland, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9     "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10    "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date was **April 23, 2012** for general creditors, and **June 12, 2013** for governmental claims.

1.11    "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Maryland are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12    "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing **Case No. 12-3-2301 RAG**.

1.13    "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14    "Claim" means a claim as defined in § 101(5) of the Code.

1.15    "Claimant" means a Person holding a Claim against the Debtor.

1.16    "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17    "Collateral" means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18    "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19   "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20   "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22   "Creditor" means the holder of a Claim.

1.23   "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24   "Debtor" means **Diana L. Glass.**

1.25   "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26   "Disputed Claim" means a Claim:

(a)   which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or

(b)   which is listed as disputed under any provision of this Plan, or

(c)   as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27   "Effective Date" means the date that is thirty (30) days after the Confirmation Order becomes a Final Order.

1.28   "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29   "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30   "Estate" means the bankruptcy estate(s) of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31    "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32    "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33    "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34    "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35    "Lien" has the meaning set forth in §101(37) of the Code.

1.35A    "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.36    "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.37    "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.38    "Petition Date" means **December 14, 2012,** the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.39    "Plan" means this Plan, as it may be amended from time to time.

1.40    "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.41 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.42 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.43 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.44 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.45 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.46 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.47 "Secured Claim" means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor(s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.48 "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     Class A (Priority (non-tax) Claims): Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. There are three Class A claims filed by Frank Pistorio, Jr.

2.2.    Class B-1 (Bank of America, N.A. lien on Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland [Claim No. 5]): Class B-1 consists of the secured prepetition claim of Bank of America, N.A. in the amount of $1,985,024.83 as of the filing date, secured by a first deed of trust on the Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland.

2.3     Class B-2 (Baltimore County property tax lien on Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland [Claim No. 10]): Class B-2 consists of the secured prepetition claim of Baltimore County in the amount of $31,559.89 as of the filing date, secured against the Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland.

2.4     Class B-3 (Tax Certificate Consultants, Inc. tax sale lien on Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland [Claim No. 13]): Class B-3 consists of the secured prepetition claim of Tax Certificate Consultants, Inc. in the amount of $31,430.83 as of the filing date, secured against the Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland.

2.5     Class B-4 (Internal Revenue Service tax lien [Claim No. 1): Class B-4 consists of the secured prepetition claim of the Internal Revenue Service in the amount of $754,392.30 as of the filing date, secured against the Debtor's real and personal property.

2.6     Class C-1 (DIA-Aylesbury Limited Partnership [Claim No. 4]): Class C-1 consists of the unsecured prepetition claim of DIA-Aylesbury Limited Partnership in the amount of $350,000.00 as of the filing date.

2.7     Class C (General Unsecured Claims): Class C consists of all general unsecured claims against the Debtor, excluding Class C-1.

## ARTICLE III– TREATMENT OF CLAIMS AND INTERESTS

3.1.    *Administrative Expenses (Unclassified):* Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 730
GREENBELT, MD 20770
(301) 924-4400

(a) The total unpaid professional fees as of the date of this Plan are estimated to be approximately $45,000.00, of which $20,000.00 is covered by the prepetition retainer, although additional fees will be incurred before the Effective Date. The Debtor is unaware of any other unpaid administrative expense claims.

(b) All preconfirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

3.2   *Priority Taxes:* The State of Maryland has filed a claim for priority taxes for $142,731.00 (Claim No. 14). This claim shall be paid in full, with interest at 3% *per annum*, in equal quarterly cash payments commencing 90 days after the Effective Date of the plan, amortized over the remaining period of 5 years from the Petition Date, unless a different treatment is agreed to or provided for in the Plan.

3.3.   *Class A (Priority (non-tax) Claims):* Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. The Class A Claimant, Debtor's ex-husband, has filed three priority claims totaling $365,134.04. By agreement with the Class A Claimant, these claims will be paid in monthly installments of $10,142.62 for 39 months and one installment of $4,329.06 plus any allowed Class A Claimant attorney's fees, which pays interest on the claims at 6% per annum for 40 months. Should the Debtor receive gross distributions from the Marvin Glass Liquidating Trust totaling more than $1,500,000.00 for any calendar year beginning January 1, 2014, one half of such distribution in excess of $1,500,000.00 shall be paid to Class A creditors, up to the amount of the claim, on or before February 1 of the following year. Should such payment be made, interest shall be recalculated for the remaining months of the distribution, if any. This class is impaired.

3.4   The monthly payment called for in the preceding paragraph shall be paid on or before the 15th of each month, commencing on the month after confirmation of the Plan, and shall continue until the Class A claim is paid in full as provided herein.

3.5   The Debtor will provide the Class A claimant and his attorney with a copy of the document creating the Marvin Glass Liquidating Trust prior to the confirmation of the Plan, and will, within 15 days of receipt, transmit to the Class A claimant and his attorney all evidence of distributions and correspondence from the Trust received subsequent to the filing of this case and after confirmation of the Plan until the Class A claim is paid in full. The Debtor will authorize the trustees of the Marvin Glass Liquidating Trust to communicate and release such information regarding the distribution to the Debtor as the Class A claimant reasonably deems appropriate.

3.6   Notwithstanding anything to the contrary in this Plan and as it relates to the Class A claimant's claim, all Class A payments under the Plan remain as Domestic Support Obligations as that term is defined in 11 U.S.C. §101 (14A). Additionally, the

CHUNG & PRESS, LLC
6404 IVY LANE SUITE 730
GREENBELT, MD 20770
(301) 924-4400

$10,000.00 monthly spousal support payment that the Debtor is obligated to make under that Marital Settlement Agreement, dated January 25, 2000 (the "Marital Settlement Agreement) shall retain its characteristic as a Domestic Support Obligation as that term is defined in 11 U.S.C. §101(14A).

      3.7.    *Class B-1 (Merrill Lynch Credit Corporation/Bank of America, N.A. lien on Debtors' residence at 12317 Cleghorn Road, Hunt Valley, Maryland [Claim No. 5]):* Class B-1 consists of the secured prepetition claim of Merrill Lynch Credit Corporation (Claim No. 5), in the amount of $1,985,024.83 as of the filing date, secured by a deed of trust on the Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland 21030. This claim shall be paid in accordance with the contractual terms thereof, except as provided for herein. The preconfirmation arrears of $277,925.44 shall be cured in 38 equal quarterly installments of $2,700.57, followed by four (4) equal quarterly installments of $43,825.95, without interest, commencing 90 days after the Effective Date of the Plan. This class is impaired.

      3.8    *Class B-2 (Baltimore County property tax lien on Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland [Claim No. 10]):* Class B-2 consists of the secured prepetition claim of Baltimore County (Claim No. 10) for real estate taxes in the approximate amount of $31,559.89 as of the filing date, secured by the Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland 21030. This claim shall be paid in full, with statutory interest, in a lump sum 18 months after the Effective Date of the Plan. This class is impaired.

      3.9    *Class B-3 (Tax Certificate Consultants, Inc. tax sale lien on Debtor's residence at 12317 Cleghorn Road, Hunt Valley, Maryland [Claim No. 13]):* Class B-3 consists of the secured prepetition claim of Tax Certificate Consultants, Inc. (Claim No. 13) as the tax sale purchaser of the Debtor's residence in the approximate amount of $31,430.83 as of the filing date, secured by 12317 Cleghorn Road, Hunt Valley, Maryland 21030. This claim shall be paid in full, with statutory interest, in a lump sum 12 months after the Effective Date of the Plan. This class is impaired.

      3.10    *Class B-4 (Internal Revenue Service tax lien [Claim No. 1]):* Class B-4 consists of the secured prepetition claim of the Internal Revenue Service in the amount of $754,392.30 as of the filing date, secured against the Debtor's real and personal property. This claim shall be paid in full, with interest at 3% *per annum*, in equal quarterly cash payments commencing 90 days after the Effective Date of the plan, amortized over the remaining period of 5 years from the Petition Date, unless a different treatment is agreed to or provided for in the Plan.

      3.11    *Class C-1 (DIA-Aylesbury Limited Partnership [Claim No. 4]):* Class C-1 consists of the unsecured prepetition claim of DIA-Aylesbury Limited Partnership (Claim No. 4) in the approximate amount of $350,000.00 as of the filing date. On the Effective Date, the Debtor shall grant DIA a security interest in the real property owned by the Debtor at 12317 Cleghorn Road, Hunt Valley, Maryland 21030 (the "Property") by re-

voking her revocable trust and allowing DIA's judgment lien to attach to the Property. This claim shall be paid in full, with interest at 10% from the Effective Date of the Plan, in monthly payments beginning on the Effective Date of the Plan of $11,791.85 for 36 months. Upon the completion of all such payments, DIA shall enter its judgment as satisfied and release its lien. This class is impaired.

    3.12    *Class C (General Unsecured Claims)*: Class C consists of all general unsecured claims against the Debtor, excluding Class C-1. Holders of Class C claims shall be paid, *pro rata,* a total of $117,604.05 (or such other amount as will be sufficient to pay the claims in full), to be paid in eight (8) quarterly installments of $14,700.51 beginning 90 days after the final payment to priority tax creditors hereunder, plus *Till* interest at 4%, such interest payment in the estimated amount of $17,437.71 to be made in a lump sum 90 days after the completion of the eight (8) quarterly payments. Confirmation of the Plan shall serve to release any holder of a Class C claim as of the Petition Date of any claim or cause of action against such holder (other than defenses of setoff or recoupment). The *pro rata* share of the claimed amount of any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account until a Final Order is entered. When Final Orders are entered disallowing or allowing and liquidating all Class C claims, the remaining funds in the bank account shall be distributed to the holders of all Class C claims *pro rata*. Payments on Class C claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor. This class is impaired.

## ARTICLE IV - EXECUTION OF PLAN

The Debtor shall fund this Plan with distributions from the Marvin Glass Liquidating Trust, of which she is a beneficiary, and cash on hand. The Debtor shall retain the Assets of the estate, and shall pay ordinary living and ongoing charitable expenses, pay the operating expenses for the real estate, and pay the creditors the amounts set forth in the Plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim. The Debtor acknowledges that she has no causes of action to be asserted against the Class A claimant.

## ARTICLE V - RETENTION OF JURISDICTION

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Plan provides for the Bankruptcy Court to retain exclusive jurisdiction over all matters relating to the Plan, including the allowance of Claims and the adjudication of any Avoidance Actions. Upon substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge. This provision serves to avoid the need to pay U.S. Trustee fees after substantial consummation, an expense Debtors can ill afford.

## ARTICLE VI - EXECUTORY CONTRACTS AND LEASES

Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, their Estate, Assets, or properties. All Rejection Claims shall be Class C General Unsecured Claims.

## ARTICLE VII - MODIFICATION OF PLAN

The Debtor may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with § 1127(b) or (e). After confirmation, the plan may be modified pursuant to § 1127(e).

## ARTICLE VIII - DISCHARGE AND CLOSING

8.1.   Upon completion of all payments due to Class C creditors, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code (which shall include the Class B, C-1 and C claims). The Debtor acknowledges that her obligations owed to the Class A Claimant under the Marital Settlement Agreement identified in paragraph 3.6 shall not be subject to the discharge order to be entered in this case.

8.2.   Upon substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge.

## ARTICLE IX - MISCELLANEOUS

9.1   No creditor may take any collection action against Debtor or property of the estate or of the Debtor so long as Debtor is not in Material Default in performing her obligations to such creditor under the Plan. It is agreed and notwithstanding any provisions contained in this Plan, that should the Debtor fail to make her normal spousal support payments under the Marital Settlement Agreement as those payments become due, then such default shall permit the Class A claimant to exercise all his rights and remedies un-

der the Marital Settlement Agreement in addition to those remedies that may be provided under Title 11 of the United States Code.

9.2     On the Effective Date of the Plan, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

9.3     Except as specifically provided in this Plan, including but not limited to those provisions contained in paragraphs 3.6, 8.1 and 9.1 pertaining to the Class A claimant's right to receipt of future spousal support payments from the Debtor under the Marital Settlement Agreement, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

9.4     The Debtor and the Class A claimant, within 20 days after the Effective Date, shall jointly file an Order of Dismissal, without prejudice, of all pending issues in the proceedings entitled *Diana Louise Glass (formerly Diana Glass Pistorio) v. Frank Pistorio, Jr.,* filed in the Circuit Court for Baltimore City, Case No. 03-C-99-003011.

November 13, 2013                                              Respectfully submitted,

                                                               CHUNG & PRESS, LLC


                                                               By:    /s/ Brett Weiss_____
                                                                      Brett Weiss, Bar No. 02980
                                                                      6404 Ivy Lane, Suite 730
                                                                      Greenbelt, Maryland 20770
                                                                      (301) 924-4400
                                                                      Brett@BankruptcyLawMaryland.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing document was delivered electronically via ECF this 13th day of November, 2013, to: U.S. Trustee, 101 West Lombard Street, Suite 2625, Baltimore, Maryland 21201; Mark D. Meyer, Esquire, Ronseberg & Associates, LLC, 7910 Woodmont Avenue, Suite 750, Bethesda, Maryland 20814.


                                                               _____/s/ Brett Weiss_____
                                                               Brett Weiss